## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.

MARIUS LAMONT MAYE,
*Defendant.*

No. 3:20-cr-176 (JAM)

## ORDER DENYING MOTION TO SUPPRESS

The defendant Marius Lamont Maye moves to suppress evidence seized during the

execution of a search warrant at a two-family house in Bridgeport, Connecticut. I will deny the

motion because Maye has not shown that the search warrant was issued in the absence of

probable cause, that it was based on any materially false statement, or that it was overbroad in

violation of his Fourth Amendment rights.

### BACKGROUND

Maye is charged by indictment with several counts of possession with intent to distribute

fentanyl and heroin as well as with possession of a firearm by a convicted felon.[1] He has moved

to suppress evidence seized during the course of the execution of a federal search warrant at a

two-family house at 41-43 Washington Terrace in Bridgeport, Connecticut.[2]

On October 2, 2019, Judge Fitzsimmons issued the search warrant on the basis of a sworn

affidavit submitted by Special Agent Meghan King of the Federal Bureau of Investigation

(FBI).[3] The affidavit alleges that Maye was 45 years old and had several prior convictions for

illegal drug dealing and unlawful gun possession, including a prior federal drug dealing

conviction.[4]

---

[1] Doc. #1 (indictment).
[2] Doc. #44 (motion to suppress).
[3] Doc. #47 at 7 (search warrant); *id*. at 13-27 (affidavit).
[4] *Id*. at 15-16 (¶ 10). Federal court records show that Maye previously pleaded guilty to a charge of possessing with

The affidavit further alleges that "[i]n December, 2018, FBI Charlotte reported that Maye was an associate and possible heroin source of supply for Derrick Lamont Stancil in North Carolina," and that "[t]elephone analysis and social media accounts show a close association between Maye and Stancil."[5] It later alleges that the FBI in North Carolina arrested Stancil and another individual in March 2019, at which time "agents seized over 700 grams of heroin."[6]

Most of the affidavit recounts information furnished and developed by a particular confidential human source ("CHS-1").[7] The affidavit describes how CHS-1 has prior criminal convictions but has provided accurate information in the past which has been corroborated by the seizure of firearms, narcotics, and bulk cash by the Bridgeport police department.[8]

According to the affidavit, CHS-1 conducted several controlled purchases of heroin from Maye and engaged him in numerous recorded conversations.[9] For each controlled purchase transaction, the affidavit describes how law enforcement searched CHS-1 for narcotics before the transaction, gave CHS-1 government money to take part in the transaction, furnished CHS-1 with a video/audio recording device to document the intended transaction, and then met with CHS-1 immediately afterward to recover the suspected narcotics and electronic recordings.[10]

On two occasions in January and February 2019, CHS-1 went to Maye's restaurant in Ansonia, Connecticut.[11] There he met with Maye and bought about 20 grams of heroin from him on each occasion.[12]

---

intent to distribute five grams or more of cocaine base and was sentenced principally to a term of six years of imprisonment. *See United States v. Maye*, 3:06-cr-00318-AWT (D. Conn.).
[5] Doc. #47 at 16 (¶ 11).
[6] *Id*. at 19 (¶ 17).
[7] *Id*. at 15 (¶ 9).
[8] *Id*. at 16 (¶ 12).
[9] *Ibid*. (¶ 13).
[10] *Id*. at 17-21 (¶¶ 15, 16, 19, 21).
[11] *Id*. at 17-18 (¶¶ 15, 16).
[12] *Ibid*.

One day in April 2019, Maye invited CHS-1 to "Come by my house in twenty minutes," and agents conducting physical surveillance saw Maye standing in front of the house at 41-43 Washington Terrace meeting with several individuals.[13] CHS-1 met with Maye in front of the house, and Maye talked to CHS-1 about "the distribution of narcotics, expressing concern about drug dealing in the summer when the police presence is particularly heavy."[14] Maye offered to supply CHS-1 with an ounce of crack cocaine but the transaction did not occur.[15]

In May 2019, CHS-1 tried to do another controlled purchase transaction with Maye at his restaurant, but the deal did not go through.[16] Maye told CHS-1 that "he had retired because someone tried to 'line him up.'"[17]

In June 2019, CHS-1 "ran into" Maye again.[18] "Maye told CHS-1 he had narcotics for sale but that CHS-1 would need to pay up front."[19]

In September 2019, CHS-1 went to the house at 41-43 Washington Terrace while under constant physical surveillance by law enforcement agents.[20] CHS-1 then engaged in a recorded FaceTime conversation with Maye "in which Maye advised CHS-1 that 'Dave' would deliver the narcotics."[21] The affidavit then goes on to state that "CHS-1 observed a black male dressed in all black exit the area of the front porch 41-43 Washington Terrace and walk to the passenger side of the car."[22] This man was later identified by CHS-1 as David Brown.[23] CHS-1 paid Brown for

---

[13] *Id*. at 19 (¶ 18).
[14] *Ibid*.
[15] *Ibid*.
[16] *Id*. at 19-20 (¶ 19).
[17] *Ibid*.
[18] *Id*. at 20 (¶ 20).
[19] *Ibid*.
[20] *Ibid*. (¶ 21).
[21] *Ibid*.
[22] *Ibid*.
[23] *Ibid*.

40 grams of suspected heroin.[24] Following this transaction, CHS-1 called Maye but Maye was "reluctant to discuss the details of the transaction over the telephone."[25]

The affidavit alleges that the investigation had demonstrated that 41-43 Washington Terrace was "being utilized by Maye, Wynika Brown, and their family members as a single-family residence."[26] It described as well how back "[i]n 2006, members of the State Police Narcotics Task Force conducted controlled purchases of crack cocaine from Maye at 41-43 Washington Terrace" and how "[d]uring the controlled purchases of narcotics, Maye was observed on the front porch and was seen accessing 43 Washington Terrace."[27] When agents executed a search warrant in November 2006 at 43 Washington Terrace, they encountered David Brown in 43 Washington Terrace (the second floor of the house), and Maye was observed and arrested inside 41 Washington Terrace (the first floor of the house).[28]

At that time in 2006, "Maye cooperated with law enforcement and showed them where he had secreted narcotics in various makeshift locked rooms in the basement of the house."[29] Maye had the keys to all of the locks that were opened by law enforcement, and they recovered 14 grams of crack cocaine and 80 glassine folds of suspected heroin.[30] According to a female who was present in the home at that time, the house "was utilized by the occupants as a one-family house."[31]

In terms of additional connections between Maye and the house at 41-43 Washington Terrace, the affidavit recounts how the restaurant in Ansonia where CHS-1 bought narcotics

---

[24] *Ibid.*
[25] *Id.* at 20-21 (¶ 21).
[26] *Id.* at 21 (¶ 23).
[27] *Id.* at 22 (¶ 24).
[28] *Ibid.*
[29] *Ibid.*
[30] *Ibid.*
[31] *Ibid.*

from Maye was owned in the name of Maye's girlfriend, Wynika Brown, with 41-43 Washington Terrace "as the associated address."[32] Maye was observed driving an Audi A7 that was registered in the name of his girlfriend, and Maye's Facebook page shows him operating a Jaguar XF Luxury sedan that is registered to a company at 41 Washington Terrace.[33]

Maye's girlfriend bought two firearms in February 2018, and they were registered to 43 Washington Terrace.[34] Utility records reflected that Maye's girlfriend subscribed to the utilities at 41 Washington Terrace, and that a relative of hers—Martha Brown—subscribed to the utilities at 43 Washington Terrace.[35] The affidavit further alleges that David Brown is a relative of Maye's girlfriend.[36]

Special Agent King alleged in her affidavit that, based on her training and experience, "drug traffickers frequently put the names of cars, residences, cellular telephones, firearms, and other assets in the names of others to conceal their ownership of them."[37] She also alleged that "[a]s a convicted felon, Maye is not entitled to possess – solely, jointly, actually, or constructively – any firearm," and "[i]n my experience, firearms are often possessed and used by drug traffickers as tools of their trade."[38] She further alleged that "drug traffickers often store drugs, weapons, drug packaging materials, cutting agents, scales, safes, safe deposit box keys, safe house keys, bulk cash, and other paraphernalia required to facilitate drug transactions in their homes."[39]

---

[32] *Ibid.* (¶ 25).
[33] *Id*. at 22-23 (¶ 25).
[34] *Id*. at 23 (¶ 26).
[35] *Ibid.* (¶ 27).
[36] *Id*. at 24 (¶ 28).
[37] *Id.*  at 23 (¶ 26).
[38] *Ibid.*
[39] *Id*. at 24 (¶ 29).

Maye has moved to suppress.[40] He argues that Special Agent King's affidavit does not establish probable cause. He further argues that the affidavit is based on false statements. And he argues that the search warrant was overbroad because it extended to both 41 and 43 Washington Terrace.

After the Government filed an opposition to Maye's motion noting in part that Maye had failed to file an affidavit to substantiate any of his claims of false statements, Maye belatedly filed an affidavit.[41] His affidavit alleges in substance that (1) he did not reside at the time of the search at 41-43 Washington Terrace but that he was an "overnight guest" at 41 Washington Terrace which was "the home of my minor daughter and her mother"; (2) that "I did not have access to Wynika Brown's firearms"; (3) that "[t]hroughout the stated investigation period, I observed CHS-1 smoking marijuana, of which he had brought to our various interactions"; and (4) that "me and my brother, Derrick Stancil, have only enjoyed a familial relationship – where no drug transactions have ever occurred."[42]

## DISCUSSION

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. When a judge decides if there is probable cause to support a search warrant, the judge must decide if there is a fair probability that contraband or evidence of a crime will be found in a particular place. *See United States v. DiTomasso*, 932 F.3d 58, 66 (2d Cir. 2019). This

---

[40] Doc. #44.
[41] Docs. #49 (Government opposition); #50 (Maye affidavit).
[42] Doc. #50 at 1-2.

determination requires no more than a practical, common-sense evaluation in light of all the facts

set forth in an affidavit. *See ibid*. "Although probable cause requires more than mere suspicion of

wrongdoing, it focuses on probabilities, not hard certainties." *Dufort v. City of New York*, 874

F.3d 338, 348 (2d Cir. 2017).[43]

Maye argues that the affidavit in support of the search warrant did not establish probable

cause to believe that there would be evidence of any crimes at 41-43 Washington Terrace. I do

not agree. The affidavit recounts Maye's numerous drug deals with CHS-1, and it is apparent

from Maye's own affidavit that he concedes having interactions with CHS-1. The affidavit also

details plenty of information to suggest that incriminating evidence against Maye would be

found at 41-43 Washington Terrace. This includes the fact that in 2006 a search warrant for

drugs had been successfully conducted at the same house, based on controlled purchases of drugs

from Maye at that location and corroborating that Maye stored drugs there. Although Maye

complains that this evidence from approximately 13 years earlier is stale, the search warrant

affidavit further describes how in April 2019 Maye had referred to 41-43 Washington Terrace as

"my house" in a conversation with CHS-1.[44] And the affidavit recounts that in September 2019

CHS-1 arrived by car at 41-43 Washington Terrace, where he spoke by telephone with Maye,

who told him that Maye would send "Dave" to meet him, and then David Brown came from the

house to sell him 40 grams of heroin.[45] Public records also showed a connection between the

house and Maye's restaurant, his luxury cars, and his girlfriend and family.

All in all, the affidavit set forth ample facts for Judge Fitzsimmons to reasonably

conclude that Maye was actively engaged in drug dealing and that evidence of this criminality

---

[43] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[44] Doc. #47 at 19-20 (¶ 18).
[45] *Id*. at 20 (¶ 21).

including narcotics and firearms would be found at 41-43 Washington Terrace. Even if probable cause were lacking, Maye has failed to show that no reasonable law enforcement agent could have relied on Judge Fitzsimmons' determination that the affidavit established probable cause. *See United States v. Leon*, 468 U.S. 897, 922 (1984); *United States v. Boles*, 914 F.3d 95, 103 (2d Cir. 2019).

Maye attests that he was no more than an overnight guest at 41 Washington Terrace where his daughter and Wynika Brown lived. But even if Maye did not live full-time at 41 Washington Terrace, this does not vitiate the facts in the affidavit to suggest that he was dealing drugs from the house at 41-43 Washington Terrace and that there was probable cause to believe that drugs and guns would be found there.

Maye's affidavit claims that "I did not have access to Wynika Brown's firearms."[46] But even if this is true, Maye does nothing to show why in light of the totality of facts set forth in the affidavit there was no probable cause to search the premises for narcotics and any tools of the trade such as firearms. *See Benn v. Kissane*, 510 F. App'x 34, 37 (2d Cir. 2013) (noting that "whether the substance of the information known to the officer is *actually true* is … irrelevant," because "all the court need decide is 'whether the officer had probable cause to believe' that the person committed a crime") (quoting *Maryland v. Pringle*, 540 U.S. 366, 370 (2003)).

Maye's affidavit attests that Derrick Stancil is Maye's brother but that he had no drug dealing relationship with him.[47] Even if I accept this statement as true and discount all allegations in the search warrant affidavit about Derrick Stancil, the rest of the search warrant affidavit sets forth facts based primarily on Maye's dealings with CHS-1 that independently

---

[46] Doc. #50 at 1; *but see* Doc. #49 at 1 (government opposition memorandum stating that two firearms and ammunition were found in a safe during the execution of the search warrant and that a key to the safe was found on Maye's key chain).
[47] Doc. #50 at 2.

establish probable cause to believe that Maye was engaged in drug dealing and that evidence of his criminal activity would be found at 41-43 Washington Terrace.

Maye further argues that the affidavit failed to disclose that CHS-1 was smoking a marijuana joint as reflected on one of the recordings from a transaction and as alleged by Maye in his affidavit. Even if true, this minor fact does nothing to undermine the existence of probable cause.

Maye does not otherwise substantiate any of his claims that Special Agent King made false statements in her affidavit. Although his motion offers his own innocent explanations for some of the affidavit's facts (such as him driving luxury cars), the fact that there may be a possibly innocent explanation for a suspect's conduct does not necessarily signify a lack of probable cause. *See Figueroa v. Mazza*, 825 F.3d 89, 102 (2d Cir. 2016).

Maye complains that the search warrant overbroadly authorized the search of both residences at 41 and 43 Washington Terrace. But the affidavit describes how both residences are part of a single two-family house and it sets forth facts that gave probable cause to conclude that both residences were used by and accessible to Maye because they were a common family dwelling. In any event, because Maye himself claims that he was an overnight guest only at 41 Washington Terrace, he has no grounds to complain at all about the search of 43 Washington Terrace. "It is well established that the Fourth Amendment applies only to spaces in which an individual has a reasonable expectation of privacy." *United States v. Simmonds*, 641 F. App'x 99, 104 (2d Cir. 2016).

Maye seeks an evidentiary hearing under *Franks v. Delaware,* 438 U.S. 154 (1978). "A *Franks* hearing is warranted if the defendant can make a preliminary showing that (a) the warrant affidavit contains a false statement, (b) the false statement was included intentionally or

recklessly, and (c) the false statement was integral to the probable cause finding." *United States v. Caraher*, 973 F.3d 57, 62 (2d Cir. 2020). Because Maye has not made the required preliminary showing of any materially false statements (much less that any false statements were intentionally or recklessly made), there are no grounds for an evidentiary hearing.

### Conclusion

The Court DENIES the motion to suppress (Doc. #44).

It is so ordered.

Dated at New Haven this 11th day of April 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge